**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | |
|---|---|
| SECURE DATA TECHNOLOGIES, INC. ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | CASE NO. 17-692 |
| ) | |
| MICHAEL DONAHUE ) | |
| ) | |
| & ) | |
| ) | |
| ATCI, INCORPORATED ) | |
| D/B/A THE APPLIED GROUP ) | JURY DEMAND |
| ) | |
| Defendants ) | |

## COMPLAINT

### Parties

1. Plaintiff Secure Data Technologies, Inc. (referred to herein as "SDT" and "Plaintiff") is an Illinois Corporation and citizen with its primary place of business located at 1392 Frontage Road, O'Fallon, St. Claire County, Illinois.

2. Defendant Michael Donahue (referred to herein as "Donahue") is a resident and citizen of Missouri, 2436 Hickory Manor Drive, in Ballwin, Missouri 63011.

3. Defendant ATCI, Incorporated (referred to herein as "Applied") is a Missouri Corporation, a citizen of the State of Missouri, doing business as the Applied Group, with its primary place of business located at 12125 Bridgeton Square Dr., Bridgeton, MO 63044.

### Jurisdiction and Venue

4. This Court has original jurisdiction of the instant matter pursuant to 28 U.S.C.§1332 for it is a civil action where the matter in controversy exceeds the sum or value of

1

$75,000, exclusive of interest and costs, and is between citizens of different States, Illinois and Missouri.

5. This Court has personal jurisdiction over the Defendants by virtue of the Illinois Long Arm Statute as result of Defendants committing torts and breach of contract against Plaintiff in this judicial district.

## Nature of the Action

6. This civil action is for violation of Illinois Trade Secrets Act ("ITSA") (765 ILCS 1065/1 *et seq.* (West 2002)),and includes claims of Request for Injunction, Breach of Contract, Tortious Interference, and Unjust Enrichment related to a Defendant sales person leaving the employ of Plaintiff with confidential and proprietary information that is being currently used by the sales person and the second Defendant, his new employer, in direct competition with Plaintiff.

## Facts Common to all Counts

7. Plaintiff SDT is an infrastructure technology company, which provides clients with hardware, software, managed services and professional services in four areas: Collaboration, Data Center, Network and Security

8. Defendant Applied is a direct competitor of SDT that claims to be a consultative, infrastructure technology company focused on applying technology tools and solutions to customers' unique environments.

9. Defendants Donahue claimed to work for SDT from the period of approximately November 14, 2016 to May, 2017, and now is employed by Applied.

10. During the period of Donahue's employment with SDT, Donahue received a yearly base salary of $65,000, and also received sales commissions.

11.     Attached hereto as Exhibit 1 is an Employee Non-Compete Agreement entered into by Donahue with SDT on November 14, 2016.

12.     Section 2 of said Non-Compete Agreement has the following terms in place concerning "Confidential Information":

> 2. Confidential Information.
> (a) From and after the date of this Agreement (without limitation as to time), Employee shall treat as the Company's confidential information ("Confidential Information") all data, customer lists, information, ideas, knowledge and papers pertaining to the affairs of the Company which are not made public under the direction of the Company's management. Without limiting the generality of the foregoing, such Confidential Information shall include: the identity of customers; the identity of the Company's suppliers and prospective suppliers; the identity of the Company's creditors and financial backers or potential creditors and other potential financial backers; technical improvements, designs, inventions, methods, processes, techniques and skills, devised, developed or used by or for the Company; the Company's estimating and costing procedures and the cost and gross prices charged by the Company for its services; the prices or other consideration charged to or required of the Company by any of its suppliers or potential suppliers; and the Company's sales and promotional policies. Employee shall not reveal Confidential Information to others except in the proper exercise of Employee's duties and authority for the Company, nor use Employee's knowledge thereof in any way that would be detrimental to the interests of the Company. Employee shall also treat all information pertaining to the affairs of the Company's customers and suppliers with the same degree of confidentiality as he is obligated to treat the Confidential Information. Employee shall upon or prior to Employee's termination of employment with the Company turns over to the Company all copies of all documents, papers, memoranda, data, or other matter, whether published or unpublished and in whatever media they exist, which Employee may have or control relating to the Company or its customers, and that the same is and shall be the exclusive property of the Company and the Company shall be entitled to all copyright rights therein.
> (b) All inventions, designs, discoveries, developments, improvements or other Confidential Information, whether or not patentable or subject to copyright, developed by Employee while an employee of the Company shall belong exclusively to the Company. Without limiting the foregoing, all copyrightable material produced by the Employee while an employee of the Company shall be deemed to be "works for hire" produced for the Company. Employee shall execute such other documents and perform (or cause to be performed) such other acts as the Employer may reasonably request in order to effectuate the provisions and intent of this paragraph and assist the Company in enforcing its rights in said inventions, designs, discoveries, developments, improvements or other Confidential Information.
> (c) Employee covenants that Employee has not and will not use or disclose the confidential information of any of Employee's prior employers. Employee covenants that, by Employee's employment by the Company will not violate any agreement that Employee has with any of Employee's prior employers.

13.     During the period of Donahue's employment for which he was receiving salary, there were concerns raised which suggested the possibility that Donahue was not actually working for SDT while he had the benefit of accessing SDT's confidential information.

14.     It was subsequently revealed to SDT that during the period of Donahue's employment with SDT two potential clients of the company that Donahue claimed to be working on actively pursuing were not in fact being actively pursued by Donahue.

15.     While still working with SDT, Donahue applied for and accepted a substantially similar sales position with SDT's competitor, Applied.

3

16. During this time period, Donahue had the advantage of reviewing, choosing and storing relevant information to take from SDT to use in his new position with Applied.

17. SDT's research regarding Donahue's company computer after Donahue left the company confirms that towards the end of his employment, Donahue gained access to the proprietary and confidential internet cloud based information, including SDT's information stored with salesforce.com.

18. SDT's research regarding Donahue's company computer after Donahue left the company confirms that Donahue downloaded a variety of information that he had no reasonable business to download concerning his employment with SDT,.

19. Said confidential and proprietary information was downloaded by Donahue (and Applied) for Donahue to use for his job with Applied as a sales person of products similar to SDT's products.

20. While still employed by SDT, in or around May 11, 2017, Donahue intentionally created an Excel spreadsheet of confidential sales information, including client names, client addresses, client emails, client phone number, and the names of client contacts, and the titles of said client contacts, from multiple accounts held by SDT.

21. The Excel spreadsheet of confidential information was created by Donahue on company time, from company propriety information kept on company software, while ostensibly employed by the company, but solely for his personal gain and the gain of his new employer, Applied.

22. On May 11, 2017, Donahue surreptitiously and without authority sent from a SDT company computer the confidential sales information and other related information on the Excel spreadsheet to his personal email at yahoo.com.

4

23. There was no valid business reason (to benefit SDT) for Donahue to retain the information he collected on the Excel spreadsheet and transfer it to his personal yahoo email.

24. On information and belief, Donahue solely collected and saved said information for his benefit and the benefit of his new employer, Applied.

25. During said period, Donahue used access to the SDT's proprietary information, including its sales software.

26. In particular, a review of the search history on Donahue's computer confirms that Donahue surreptitiously conducted a high volume of information review and extraction from salesforce.com between May 10 through May 12, 2017.

27. The proprietary and confidential cloud based information kept by SDT on salesforce.com contain company secrets, including bid histories, offered discounts, sales strategies and other historical information kept by SDT for the benefit of maintaining its client relationships.

28. Said salesforce.com information is kept confidential because, among other things, knowledge of said information by a competitor would ruin any competitive advantage that SDT might have and would afford the opportunity of a competitor underbidding SDT if said information got into the competitor's knowledge base.

29. At all times, SDT has maintained efforts to keep the information from salesforce.com confidential, and SDT has taken multiple steps to ensure said confidentiality, including  ensuring that said information is kept on a close system that outsiders could not access, and further by limiting access to said information to those persons who signed a confidentiality agreement, among other things.

30. There was no valid business reason (to benefit SDT) for Donahue to choose to access, review and retain the information he collected from salesforce.com in May, 2017.

31. On information and belief, Donahue solely chose, accessed, reviewed, collected and saved said information for his benefit and the benefit of his new employer, Applied.

32. On or around May 22, 2017, *only after* Donahue collected the salesforce.com information and delivered to himself the Excel spreadsheet with SDT sales related information, did Donahue report to SDT that he was voluntarily resigning from SDT and leaving its employment.

33. Prior to his departure, Donahue claimed that he could not do his position with SDT because he could not drive or meet with potential clients due to health concerns.

34. Donahue intentionally and deceptively left the impression with SDT that he was not going to continue to work in the industry upon his departure.

35. Shortly thereafter it came to SDT's attention that Mr. Donahue was working for its competitor in the industry, Applied.

36. Steve Grimm, the President of Applied claims that Donahue began his employment with Applied on May 30, 2017.

37. On June 1, 2017, Dana Steffey, the President and CEO of SDT sent an email to Steve Grimm, to advise that Michael Donahue had a non-competition agreement with SDT. The email provided a copy of said agreement.

38. On June 1, 2017, Plaintiff's counsel also sent the attached letter (Exhibit 2) sent via certified mail, to address the terms of the Non-Competition Agreement.

39. On June 9, 2017, counsel for Applied sent a response letter stating that Mr. Donahue's Non-Competition agreement with SDT was non-enforceable. (Exhibit 3). The letter

further suggested that "Mr. Donahue did not establish valuable customer relationships with any customers he dealt with through his employment with SDT, and that SDT had "no protectable interest." (Exhibit 3).

40. The June 9, 2017 letter from Applied's counsel conspicuously failed to acknowledge that Donahue and Applied had access to SDT's confidential salesforce.com and client sales information. The June 9, 2017 letter further confirmed Applied's intent to use Donahue as a competitive sales person against SDT.

41. On information and belief, Applied was (and is) cognizant of Donahue's taking of the salsesforce.com confidential information and Excel spreadsheet of confidential sales information, including client names, client addresses, client emails, client phone number, and the names of client contacts , and the titles of said client contacts, from multiple accounts held by SDT, as well as SDT's company secrets, including bid histories, offered discounts, sales strategies and other historical information kept by SDT for the benefit of maintaining its client relationships and had the intent to benefit from said information, while at the same time implying to SDT that no wrong doing was committed by Donahue.

## COUNT I- Violation of the Illinois Trade Secrets Act- Donahue & Applied

42. Plaintiff incorporates by reference Paragraphs 1 through 41 into this Count I of Plaintiff's Complaint.

43. Under Illinois law, an employer's trade secrets are a protectable interest.

44. Defendants misappropriated SDT's trade secrets in violation of the Illinois Trade Secrets Act ("ITSA") (765 ILCS 1065/1 *et seq.* (West 2002)).

45. The ITSA, in relevant part, provides: `Trade secret' means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program,

device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d) (West 2002).

46. SDT took affirmative measures to prevent others from acquiring or using its proprietary customer information.

47. SDT further expended considerable effort and money in developing the data taken by Defendants.

48. The proprietary information was sufficiently secret to give SDT a competitive advantage through its exclusive use.

49. Among the steps taken by SDT to protect its proprietary customer information was to enter into agreements with all of its sales force to keep such information confidential; to store the information on a limited access computer system, and only allow those who have acknowledged the secret and proprietary nature of the information to use it, and to intentionally not publish the information to the public.

50. Donahue's Non-Compete Agreement specifically provides "From and after the date of this agreement (without limitation as to time), Employee shall treat as the Company's Confidential Information ('Confidential Information) all data, customer lists, information…and papers which the company has not made public under the direction of the company's management.

51. Among the information taken by Donahue to his new employer, Applied are, *inter alia*, materials specifically deemed confidential under the Non-Compete Agreement, including

8

the identity of its customers, the Company's estimates and costing procedures and the cost and gross prices charged by SDT for its services, and sales and promotional policies.

52. In the instant case, Dohahue secretly retrieved and took trade secrets maintained by SDT before departing its employment. Prior to his departure, Donahue retrieved from SDT's proprietary software system, salesforce.com, information concerning its customers.

53. Of note, prior to his departure, Donahue downloaded from SDT's proprietary software system, salesforce.com, information concerning customers that Donahue had no relation to in any way.

54. Michael Donahue's browsing history from his company computer indicates that around the same date he sent himself an account list (the Excel file) that he scoured through SDT's Salesforce Application (database for clients, deals, contacts) to garner intellectual property.

55. SDT has an ascertainable right to the information taken—specifically that the customer lists, bids, and sales quotations that Defendants misappropriated.

56. The sales and other related data taken is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use.

57. The sales and other related data taken is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

58. The sales and other related data taken could not be easily acquired or duplicated by others.

59. Donahue took said sales and other related data with the intention to be employed at a competitor Applied and use it to competitive advantage against SDT.

60. On information and belief, in his new employment with Applied, (SDT's competitor), Donahue through the auspices of Applied is calling on the clients and potential clients of SDT, and using the competitive information taken.

61. Defendants' willful misappropriation of SDT's trade secrets was intentional and motivated by malice and in conscious disregard of SDT's rights.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants finding that they violated the Illinois Trade Secrets Act; order that Defendants be required to give an accounting of all gains for profit, and advantage derived through the use of the SDT trade secrets; that judgment be entered for Plaintiff and against Defendants for Plaintiff's actual damages in an amount in excess of $ 75,000, for gains, profits, or advantages attributed to Defendants' violation of the Illinois Trade Secrets Act, according to best available proof; award increased and exemplary damages for Defendants' willful misappropriation of Plaintiffs' trade secrets, which was intentional and motivated by malice and in conscious disregard of Plaintiffs' rights; and for all other relief just and available under the circumstances.

## COUNT II- Injunctive Relief- Donahue & Applied

62. Plaintiff incorporates by reference Paragraphs 1 through 61 into this Count II of Plaintiff's Complaint.

63. Under the ITSA, the statute specifies, "[a]ctual or threatened misappropriation may be enjoined." 765 ILCS 1065/3 (West 2002).

64. Also, under Illinois law, courts may also grant injunctive relief to prevent the inevitable use or disclosure of misappropriated trade secrets. *PepsiCo, Inc. v. Redmond,* 54 F.3d 1262, 1269 (7th Cir.1995).

65. Donahue, a former employee, had detailed knowledge of its trade secrets, including customer needs, problems, planned product upgrades, and existing contracts, who is now working as a salesperson for its direct competitor, Applied.

66. The misappropriated data Donahue acquired is exactly the type of information that a salesperson needs and must use to effectively compete for customers against SDT on behalf of a competitor.

67. Among other things, there is a real threat Defendants will use SDT's information, which includes pricing and other customer information, to underbid SDT.

68. Under the circumstances, there is a danger of irreparable harm and the absence of an adequate remedy at law as to future use of SDT's data by Defendants.

69. In this case, plaintiff seeks a preliminary and permanent injunction to prevent further or inevitable disclosure or use of the trade secrets Donahue misappropriated.

70. The data acquired by Donahue will inevitably be used by Defendants to further Applied's business interests, to the detriment of SDT.

71. Under the circumstances described herein, there is irreparable harm and lack of an adequate remedy concerning the threat of conversion of SDT business, including the prospect that Defendants could strategically underbid SDT when competing for future contracts. SDT is threatened with losing customers, technology, its competitive advantage, its trade secrets and goodwill in amounts which may be impossible to determine, unless Defendants are enjoined and restrained by order of this Court.

72. The type of competitive losses alleged here often inflict irreparable injury and lack an adequate remedy at law, due to the difficulty in calculating the loss of existing and future business.

WHEREFORE, Plaintiff requests that this court enter a preliminary and permanent injunction against Defendants prohibiting Defendants and their subsidiaries, officers, directors, agents, servants, employees, licensees, successors, and assigns, and those in active concert, from benefiting from the misappropriation of Plaintiffs' trade secrets and against such continued misappropriation of Plaintiffs' trade secrets, and enter preliminary and permanent injunction to prevent the Defendant from gaining competitive advantage through the unlawful misappropriation.

### COUNT III- Breach of Contract- Donahue

73. Plaintiff incorporates by reference Paragraphs 1 through 72 into this Count III of Plaintiff's Complaint.

74. Donahue's Non-Competition Agreement is a valid and enforceable contract.

75. The confidentiality covenants and other provisions contained in the agreement are reasonably necessary to protect legitimate protectable interests in trade secrets, confidential information, customer relationships, work force and goodwill.

76. SDT has fully performed all of its obligations under the agreement.

77. Donahue breached and threatens to continue to breach the agreement in at least one of the following ways by: A. Downloading and appropriating SDT's proprietary and secret data; B. by accepting a position with a competitor, and selecting and taking SDT data to use in competition against SDT;  C. by accepting employment with a competitor, Applied that will make it impossible for him to avoid disclosing or utilizing SDT's trade secrets or confidential information in violation of Sections 2 of the agreement.

78. As a result of anyone of these breaches of his agreement, SDT has been injured and faces additional injury.

79. SDT lost and is threatened with losing customers, technology, its competitive advantage, its trade secrets and goodwill.

WHEREFORE, Plaintiff requests that this court issue an order in its favor and against Defendant Donahue as to Donahue's' breach of contract, to award damages concerning said breach, costs, attorneys' fees and all other relief the Court finds appropriate.

### COUNT IV- Tortious Interference With a Contract- Applied

80. Plaintiff incorporates by reference Paragraphs 1 through 79 into this Count IV of Plaintiff's Complaint.

81. Donahue's Non-Competition Agreement is a valid and enforceable contract.

82. The confidentiality covenants and other provisions contained in the agreement are reasonably necessary to protect legitimate protectable interests in trade secrets, confidential information, customer relationships, work force and goodwill.

83. SDT has fully performed all of its obligations under the agreement.

84. Donahue breached and threatens to continue to breach the contract in at least one of the following ways by: A. Downloading and appropriating SDT's proprietary and secret data, and B. by accepting a position with a competitor, and selecting and taking SDT data to use in competition against SDT; C. by accepting employment with a competitor, Applied, that will make it impossible for him to avoid disclosing or utilizing SDT's trade secrets or confidential information in violation of Sections 2 of the agreement.

85. Applied had knowledge of the agreement and Donahue's employment with SDT, and was further sent copies of the agreement by SDT.

86. Applied intentionally and unjustifiably induced breach of the agreement; and induced Donahue to collect, and maintain the information received surreptitiously from SDT,

and/or induced Dohanue to use the information received surreptitiously from SDT for competitive purposes against SDT, in direct violation of the agreement.

87.     Donahue's breach of the contract must have been caused by Applied's actions; including the hiring of Donahue to act as a competitive sales person with the use of SDT's information.

88.      As a result of anyone of these breaches of his agreements, SDT has been injured and faces additional injury.

89.     SDT lost and is additionally threatened with losing customers, technology, its competitive advantage, its trade secrets and goodwill, as result of Applied's conduct.

90.     Upon information and belief, Applied's conduct as to the misappropriation of SDT's trade secrets contrary to the terms of the agreement with Donahue has been willful and malicious in light of its participation in Donahue's acceptance of a job offer to work for Applied and participation in the selection, download and use of SDT confidential information while Donahue still employed by SDT with the intention to use said information with Applied, and Applied's continued use of said information after being fully cognizant of the ill-gotten competitive information. Therefore, Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, Plaintiff requests that this court issue an order in its favor and against Defendant Applied as to inducing Donahue's' breach of contract, to award actual and punitive damages in excess of $ 75,000 concerning said breach, costs, attorneys' fees and all other relief the Court finds appropriate.

## COUNT V -Unjust Enrichment-- Donahue & Applied

91.     Plaintiff incorporates by reference Paragraphs 1 through 90 into this Count V of Plaintiff's Complaint.

92. Defendants will be unjustly enriched by the misappropriation of SDT"'s trade secrets and confidential information, and, unless restrained, will continue to threaten to use, actually use, divulge, threaten to disclose, acquire and/or otherwise misappropriate HP's trade secrets and confidential information.

93. Upon information and belief, Defendants' threatened misappropriation has been willful and malicious in light of Donahue's execution of a contract prohibiting his current conduct and his deliberate violation of the contractual obligations, and secretive application and acceptance of a job offer to work for a competitor, and selection, download and use of SDT's confidential information while still employed by SDT with the intention to use said information with Applied. Therefore, Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, Plaintiff requests that this court issue an order in its favor and against Defendant Donahue as to Donahue's' breach of contract, to award actual and punitive damages in excess of $ 75,000 concerning said breach, costs, attorneys' fees and all other relief the Court finds appropriate.

Plaintiffs respectfully request a Jury Trial as to all counts.

Date: July 3, 2017

Respectfully submitted,

AVIGAD LAW, LLC
By: /s/ Joshua M. Avigad
Joshua M. Avigad
IL ARDC # 6224410
225 S. Meramec, Suite 1021
Saint Louis, Missouri 63105
Telephone: (314) 488-2860
Josh@avigadlaw.com

Attorneys for Plaintiff
Secure Data Technologies, Inc.